Argued January 10, reversed and remanded January 24, 1974

## THORSON, *Appellant, v.* RICHMOND ET AL, *Respondents.*

518 P2d 642

*Raymond J. Salisbury,* Grants Pass, argued the cause for appellant. With him on the brief were Schultz, Salisbury & Cauble, Grants Pass.

No appearance contra.

Before O'Connell, Chief Justice, and McAllister,[*] Denecke, Holman, Tongue, Howell and Bryson, Justices.

TONGUE, J.

This is an action under the Oregon Securities Law (ORS 59.115) to recover the purchase price paid for securities which were not registered with the Oregon Corporation Commissioner. The case was tried before the court, without a jury. The court held that the sale to plaintiff was exempt from registration under ORS 59.035 (2) as an "isolated transaction" and, accordingly, entered judgment in favor of defendants. Plaintiff appeals.

Defendant Tanoak Industries, Incorporated (Tanoak), was incorporated as an Oregon corporation in 1967, with an authorized 2,500 shares of common stock, to manufacture baseball bats made of Oregon tan oak. It appears that 1,225 shares of common stock were issued to the original stockholders.

Defendant Richmond was then approached by the officers of Tanoak, which was in need of additional funds. As a result he prepared a proposal under which five of his friends would each invest $8,000, so as to raise $40,000 in new capital for the corporation. By the terms of that proposal 1,275 shares of stock were to be issued to the members of that group, which would then own 51 per cent of the stock of the corporation.

Defendant Richmond was elected as president of the corporation. Five of his friends each paid $500

---

[*] McAllister, J., did not participate in this decision.

for a study of the business as an investment. Two members of the group then withdrew, leaving three of the original group, who apparently paid a total of $8,000 each and stock was issued to each of them.

Participation was then offered to a Roseburg doctor, who also invested $8,000. On February 6, 1968, stock was issued to him.

A similar investment "package," including common stock, was then offered to South Coast Lumber Company and in July and August 1968 stock was issued to it in return for an investment of $8,000.

Meanwhile, a similar investment "package" was offered by defendant Richmond to a Dr. Olson, a scientist, to plaintiff, a medical doctor, and to his brother, a banker. Payment of $8,000 for that "package" was made in April 1968. Dr. Olson then decided not to participate because of a conflict of interest and on October 7, 1968, that stock was issued to plaintiff.

In order to make stock available for plaintiff and for South Coast Lumber Company it was necessary to work out a "redivision" of stock among the previous members of the group so as to reduce the number of shares held by each. It appears, however, that the entire $8,000 paid by plaintiff and by South Coast Lumber Company went to the corporation to provide operating funds.

To raise additional funds over 3,000 shares of preferred stock were also sold, mostly to existing stockholders, although some shares were purchased by them and given to other persons. Preferred stock certificates were issued to 35 persons, including a stock certificate for 51 shares of preferred stock to plaintiff as a part

of that investment "package." This preferred stock, however, was not issued as a part of the initial plan, and additional shares of preferred stock were sold from time to time between April 1 and October 31, 1968.

During this entire period Tanoak was in need of operating capital, which was raised through loans and through the sale of common and preferred stock. None of the stock was registered with the Oregon Corporation Commissioner. Plaintiff has tendered the stock to defendants in exchange for $8,000, which has never been repaid.

After hearing the testimony the trial court made the following "Findings and Conclusions";

> "The sole issue presented by the evidence was whether the sale of unregistered securities by the plaintiff to defendants was exempt from the requirements of ORS 59.120 as an isolated transaction. It is the opinion of this Court that the evidence established that the only sales made by the defendant were to the plaintiff and Southcoast Lumber Company. All other transfers of stock were either private sales by individual stockholders negotiated between the parties or original issues made to the initial stockholders."

ORS 59.035 (2) provides an exemption from registration for:

> "An isolated transaction not in the course of repeated and successive transactions in this state."

In *Tarsia v. Nick's Laundry Co.*, 239 Or 562, 399 P2d 28 (1965), we held that the exemption provided by ORS 59.035 (2) for "an isolated transaction" extended to include two sales of stock to two different individuals, under the facts of that case.

In so holding, we said (at 565-566):

"* * * the legislative intent in using the words 'repeated' and 'successive' in the conjunctive was for the purpose of conveying the thought of a series of sales.

" 'Series' is defined as 'a group of * * * *three* or more things or events standing or succeeding in order and having like relationship to each other.' " (Emphasis added)

The dissenting opinion in *Tarsia* (at 567) cited authority to the effect that:

"* * * two sales of securities, made one after the other within a period of such reasonable time as to indicate that one general purpose actuates the vendor and that the sales promote the same aim and are not so detached and separated as to form no part of a single plan, would be 'repeated and successive transactions.' "

In any event, a stock certificate was issued to Dr. Driver sometime after stock had been issued to the original stockholders, and also sometime after the original "Richmond group" had been organized and after stock had been issued to its original members. The sale to Dr. Driver was made as a part of the efforts by defendant Richmond and others to raise money for Tanoak and it appears that the proceeds of that sale were paid by Dr. Driver to Tanoak, rather than to any of the original members of the "Richmond group."

During this entire period defendant Richmond and the other officers and directors of Tanoak were engaged in an attempt to raise additional capital for Tanoak. Sales of preferred stock were also made in the course of those efforts during this same period of time in 1968.

Under these circumstances we do not believe that it can properly be said that "the only sales [of stock] made by defendant were to the plaintiff and Southcoast Lumber Company," as held by the trial court, or that the sale of this unregistered stock to plaintiff was "an isolated transaction not in the course of repeated and successive transactions in this state," as required in order to qualify under the exemption provided by ORS 59.035 (2). Accordingly, we hold that the trial court erred in entering judgment in favor of defendants.

This case is therefore remanded to the trial court for entry of judgment in favor of the plaintiff. The trial court shall also determine and award reasonable attorney fees to plaintiff for the trial of this case, as provided by ORS 59.115 (2).

Reversed and remanded.